B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

FILED
U.S. Bankruptcy Court
OCT 3 1 2017
Middle District of Georgia

| PLAINTIFFS<br>Corey Kupersmith | DEFENDANTS<br>David B. McCutcheon |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known)<br>William Woodall        229-247-1211<br>1003 Patterson Street<br>Valdosta, GA 31604 |
| PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor      ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Revocation of Order confirming Chapter 13 Plan.  Bankruptcy Code Sec. 1330(a).
Dismissal of case.  Bankruptcy Code Sec. 1330(b).

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☒ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  20,000,000.00 plus |
| Other Relief Sought        Revocation of Order confirming Chapter 13 Plan.<br>Dismissal of case. | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR *David B. McCutcheon* | BANKRUPTCY CASE NO. *16-70733* | |
| DISTRICT IN WHICH CASE IS PENDING *Middle District of Georgia* | DIVISION OFFICE *Valdosta, GA.* | NAME OF JUDGE *Laney, J.* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *Corey Kupersmith* | | |
| DATE *10/27/17* | PRINT NAME OF ATTORNEY (OR PLAINTIFF) *Corey Kupersmith* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants**. Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand**. Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA

IN RE:                                    :        CHAPTER 13

    DAVID B. MCCUTCHEON
        DEBTOR            :        CASE NO. 16-70733

COREY KUPERSMITH
        PLAINTIFF          :        ADVERSARY PROCEEDING NO.:
VS.

DAVID B. MCCUTCHEON
        DEFENDANT        :        OCTOBER 30, 2017

### COMPLAINT FOR REVOCATION OF ORDER OF CONFIRMATION

The Plaintiff, Corey Kupersmith, now comes before the Court and does hereby file its Complaint for Revocation of an Order of Confirmation of Chapter 13 Plan pursuant to Bankruptcy Code §1330(a) and for disposition of dismissal as provided by Bankruptcy Code §1330(b), and does hereby allege as follows:

### I.    PARTIES AND JURISDICTION

1. This is an Adversary Proceeding in the Debtor's case number 16-70733 pursuant to Chapter 13 of the U.S. Bankruptcy Code.

2. The Plaintiff is an individual, resident of the State of Connecticut.

3. The Defendant is an individual, resident of the State of Georgia.

4. The Debtor filed his Petition for Relief pursuant to Chapter 13 on July 12, 2016.

5. The Debtor's Chapter 13 Plan was previously confirmed in August, 2017. This complaint is timely filed.

6. This is an action pursuant to Bankruptcy Code §1330(a), wherein the Plaintiff hereby alleges that the Order Confirming the Chapter 13 Plan was procured by fraud.

1

7. The Plaintiff further claims that upon the revocation of confirmation of the Chapter 13 Plan, that the Court dispose of the case by way of dismissal, as allowed by Bankruptcy Code §1330(b).

8. This Court has Jurisdiction of this case pursuant to Bankruptcy Code sec.1330, sec. 1307, sec. 105(a) and 28 U.S.C. §157.

9. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A),(L).

10. The following Facts shall show that fraud and theft was committed by McCutcheon on me, and resulting on fraud on the Court. The confirmation of plan must be revoked and the case dismissed.

## II.    BACKGROUND AND FACTS

11. The Plaintiff is credited with creating and developing the most sophisticated sniper system in the world, and formed companies for the manufacture and sale of the most advanced sniper system. The Defendant wrongfully claimed that he developed this system as per a Press Release he issued in September 2014 to the world, including other publications. The companies that I formed were Cheytac, LLC; Cheytac Associates, LLC; Cheytac USA, Greenwich Ballistics, LLC; and I was a majority owner in Jamison International. (hereafter collectively referred to as "Cheytac").

12. The sniper system combined distance, dead-on accuracy and power for distances that exceed two miles, or about 35 consecutive football fields. The sniper system was a one of a kind advancement in technology. For the first time, the three elements combined provided distances that could exceed two miles, or about 35 consecutive football fields. Such distances were unheard of until this breakthrough in the development of the product that I created over the course of years, as up until then, a

sniper bullet with accuracy could only project a distance of about 500 yards. No one

thought that this could be possible. I developed the Cheytac sniper system originally in

2001. When Cheytac was stolen by the Defendant and Attorney Mark Stern, the

company had sales at $1,500,000.00 per month average with approximately a 70-80%

profit margin in those first 18 months (2011-2012).

13. A statement of my background is attached as Exhibit 1, which is incorporated

herewith.

14. Commencing in the year 2000 with my initial back surgery, I became

increasingly ill and deathly ill, which has lasted well into 2015. I still suffer from my

back injuries and the disease of Sarcoidosis, but is since 2015 more controlled. A

statement of my severe health issues (with current letter from my doctor), including

brushes with death, is attached as Exhibit 2.

15. A statement of my doctor, Steven A. R. Murphy, attests to my medical

condition and how it affected my cognitive abilities well into the year 2015.

16. I had suffered 8 to 12 years with undiagnosed deadly medical disorders. See

Exhibit 2.

17. Early in the year 2011, I decided to consolidate my companies, into one

worldwide headquarters to grow the company.

18. I chose Nashville, GA and Mr. David McCutcheon was directed to get

Cheytac consolidated at this new location until I could join him there to run the company,

as I was planning to relocate there.

19. Multi-millions of dollars of product were shipped to the Nashville location by

me, including large amounts of ammo, materials, equipment, brass and manufacturing

3

equipment, manufactured bullets, the lathes for manufacture of the bullet heads, other vital expensive equipment, weaponry inventory, and over a million dollars in cash for a total value of over $8,000,000.00.  In addition I had sent to the Georgia location, two full multi million dollar orders (for India and Royal Brunei).  My intent was to fund my company with the ability to commence operation at this new central location.

20.  Cheytac had previously been operating and had sales to the U.S. Military, State Department approved allies, such as NATO countries, and others.

21.  By the summer of 2011, the Nashville, Georgia world headquarters was fully operational.

22.  On August 28, 2011, my Greenwich, Connecticut estate, consisting of a mansion on 17 acres plus a barn with 26 horse stalls, three apartments above and a pool house were appraised by my mortgage company year after year for an average of $17,000,000.00.  My property suffered devastating destruction from Hurricane Irene, as a direct hit from a microburst hit the property and the buildings were condemned.

23.  David McCutcheon arrived at my Greenwich home with a large truck, pulling a large trailer.  He was there to pick up my multimillion dollar gun collection from my home to bring to Nashville, Georgia location for safe keeping, as my house was condemned and I wanted my guns to be safe, as did the insurance company.  All of the guns in my house were mine, whether they were for the Cheytac sniper system/business, plus many of them were from my 15 year personal collection, some of which were very rare and valuable.  The value of my entire gun inventory of over 180 gun systems taken by the Defendant from my residence is about $5 million dollars.

4

24. Mr. McCutcheon submitted an invoice to my insurance agent, Patricia Savanella dated October 19, 2011 agreeing to take the guns, seeking insurance company reimbursement, together with four pages of listed guns that he took with him. See Exhibit 3. Clearly in the letter, he is agreeing to return the guns back to me in six months to my Greenwich residence, referring to the "transfer back" cost. He was also to file the appropriate ATF documents to transfer, store and return the guns. He did not.

25. At the same time, I requested that he take some of my personal items, as I was heading to Georgia and did not want these valuable items left in my damaged home. He took 2 valuable watches, worth $500,000.00 (I have the invoices), some art work and my computers.

26. Mr. McCutcheon never returned the guns to me; he never returned the watches and other items to me.

27. In 2011, I met and hired Attorney Mark Stern of Norwalk, Connecticut for the purpose of a) pursing a Hedge fund manager who I believe had stolen, and certainly unaccounted for, over $20 million dollars of my money, and then b) to represent me in a contested, post-divorce proceeding.

28. All of this time I was severely ill, I expected Attorney Stern to do what was best for me. Attorney Stern took every opportunity he saw to take over my financial life and personal life.

29. Attorney Stern met David McCutcheon and it wasn't long before Attorney Stern and Mr. McCutcheon were having secret meetings without my knowledge, while the Defendant was staying at my house, and they formulated a plan to steal my company.

30.  As Attorney Stern was aggressively handling all aspects of my financial life, including my difficult divorece proceedings and claims against other entities and claims made against me, he had intimate knowledge of the wealth that I had accumulated.  There were many legal and financial matters that he was handling for me, that I did not authorize.

31.  I told Attorney Stern that I wanted to go to Georgia to the Cheytac facility, and was told by Attorney Stern over and over, to wait two more weeks, etc.  He said that he needed me here in Connecticut, and this went on for about a year.  Finally he told me I cannot go to the facility in Georgia, and so I did not.  To this day, I have never been there.

32.  By Attorney Stern's manipulation, I signed a Chapter 11 Bankruptcy and it was filed in Connecticut on December 29, 2012.  Attorney Stern obtained Attorney Ellery E. Plotkin to represent me in the Bankruptcy, but the entire case was engineered by Attorney Stern.  Attorney Stern continued to represent me in various matters while I was in Chapter 11, and I continued to rely upon his advice.

33.  After a 341 meeting in my Chapter 11 case in 2013, I was advised by Holley Claiborn, Attorney for the U.S. Trustee's Office in New Haven that I should obtain the financials from Cheytac.  I called David McCutcheon to obtain the financials and he said that I had to go through Mark Stern.  Mark Stern immediately called me, and in a high shouting voice, told me never to call Mr. McCutcheon again.  Attorney Stern told me many times that Cheytac "can't sell a rusty nail", and that I should be happy that David McCutcheon is protecting my company, and that he is trying to keep it out of Bankruptcy.  He repeated over and over that Cheytac was worthless.

34. What I was told by Attorney Stern was both a lie and manipulation. I came to find out later that nothing was as he had said, and Cheytac was doing very well, it had substantial sales. Joseph Coury, who worked for Cheytac, has filed an Affidavit in this Court demonstrating over $12 million dollars in gross sales from July 2011 for a period of approximately 18 months, when he left the company. He was but one sales person for the company. In the initial first 18 months after July 2011, the profit margin was between 70 and 80%, as I had pre-shipped manufactured goods and inventory to the Georgia location.

35. Most of all that was sold was cost free to Mr. McCutcheon at the Nashville location, as I had shipped all of that weaponry, inventory, brass, ammo, machinery, as well as over a million dollars in cash, plus $3.5 million dollars in sales deposits.

36. David McCutcheon, without my approval, opened a new Cheytac company which was simply identical to my company with the Secretary of State of Georgia, called "Cheytac USA, LLC" in July, 2011. Mark Stern, who I found out much later was also Mr. McCutcheon's attorney, also claimed to be owner of Cheytac in my place. See Affidavit of Joseph Coury. All of this was done while I was deathly ill.

37. Attorney Mark Stern told me that everything will be great, just trust him. He said that someday after the Chapter 11 was over, everything will be back the way it was. Although I was massively sick, he said to stop asking questions. He told me that it will all be fine.

38. During my Chapter 11 Bankruptcy, Attorney Stern and David McCutcheon secretly obtained an investor for the company for unknown reasons. Attorney Stern and Mr. McCutcheon did whatever they pleased. Attorney Stern wrote into the Operating

Agreement a clause that if I filed Bankruptcy I could lose my ownership in Cheytac, which was outrageous because it was Attorney Stern that wrongfully put me into Bankruptcy. By accepting this investor they depleted my Bankruptcy assets and this was done without the knowledge of my Bankruptcy attorney, Ellery E. Plotkin.

39. Later on May 22, 2014, I received a letter from David McCutcheon telling me that my ownership interest in Cheytac was completely terminated because of the filing of my Bankruptcy fully a year and a half prior. See letter attached as Exhibit 4. The recitation of the summary of the Brunei order in that letter was also a complete fabrication. See paragraph 52 below.

40. David McCutcheon and Mark Stern stole my company, worth tens of millions of dollars, and growing rapidly into a priceless enterprise.

41. During this entire time, from July 2011, up until now, I have not received any financial records of Cheytac run by McCutcheon, nor have I received any profits or other remuneration. There were three Operating Agreements produced by Attorney Stern and he had me sign, all while I was too ill. He would not let me read any document. He told me to sign, he has it all under control, stop asking stupid questions, just trust him. This would occur time and time again whenever he told me to sign anything. He never explained what I was signing.

42. None of these illegal Operating Agreements and transactions gave me anything in return. I started these companies since 2001 and I owned them, 100%. All of these transactions were frauds, perpetrated upon me by Mr. McCutcheon and Attorney Stern while they stole Cheytac. I never signed any bills of sale or deeds of conveyance of the assets of Cheytac to the Defendant, or Attorney Stern, or anyone.

43. Shortly after I retained Attorney Stern to assist me in obtaining the Hedge
fund money which disappeared from the Hedge fund manager and from my post-divorce
proceedings in 2011, Mr. McCutcheon and Attorney Stern attended a "Shot Show"
together in Las Vegas in January, 2012. Attorney Stern and Mr. McCutcheon took
Joseph Coury (mentioned above), as well as the blacksmith/armorer, Darryl Miller, to an
expensive dinner. At that dinner they talked all about Cheytac and Attorney Stern said
they would all make millions. **Further, Mark Stern stated to them that he was the
new silent partner, and that Mr. Kupersmith was now out of the picture**. See
Affidavit of Joseph Coury. Mr. McCutcheon and Attorney Stern directed Joseph Coury
never to speak to me again, that I was crazy and suicidal, addicted to drugs. All were lies
and slanders upon my character.

44. I attach as Exhibit 5, a letter notarized by notary public Debbie Sweeney of
Berrien County, GA. You will see my signature notarized by her, dated Oct. 9, 2012. As
mentioned previously, I had never been to the Georgia facility, and I can prove that on
that date I was in Connecticut or at my girlfriend's house in New Jersey. David
McCutcheon, whose name appears on the letter, was responsible for this forgery. This
was a purchase order from India. My chapter 11 bankruptcy was filed just under three
months later.

45. The Defendant McCutcheon further stole my business identity, both by letter
and electronically. Basically he kidnapped me electronically by blocking my email and
selectively responding as me. Also attached as Exhibit 6 is a letter that bears my name as
author, but I never wrote it, never saw it. Mr. McCutcheon used my name without my

knowledge or approval, whenever it was to his benefit, or needed, and never obtained my permission to do so.

46. Further, incredulously, McCutcheon created a fake email address for me that he used to communicate with others. It replies to the fake email address with my name from people he addressed it to, thought they were communicating with me, but instead were from McCutcheon, and replies were all going right back to the Defendant. See Affidavit of Joseph Coury. All of this was blocked from me. I had no knowledge.

47. Attached as Exhibit 7 is a Bank Statement of a bank account of McCutcheon with Nashville Credit Union. The account holder, Greenwich Ballistics, Inc is a company solely owned by Corey Kupersmith. The Defendant has no claim to this company by any document that exists. McCutcheon has misappropriated the name and usage of my company, Greenwich Ballistics.

48. The Defendant, David McCutcheon, stole my Cheytac companies, together with its good will, money, profits, inventory, assets, as well as my $500,000.00 value of watches and paintings, $5 million dollars of my guns, computers, corporate trade secrets and patented technology.

49. I have been damaged conservatively for over $50 million dollars.

50. Mr. McCutcheon has engaged in other improprieties during the course of his running Cheytac, which include: a.) taking deposits of customers with no intent of producing the goods (See Affidavit of Joseph Coury); b.) reselling the product to another customer (double billing) for which he has been paid from a prior customer; c.) transferring company assets to shell companies and family members and friends; d.) understating reportable income.

51. Mr. McCutcheon has never provided me with an accounting of the records of Cheytac; he has never provided me with information as to the whereabouts of my guns (which he acknowledged are mine). My guns were sitting on the floor of Cheytac in Nashville, Georgia for over one and half years. After that, they disappeared by way of transfer or sale, but I have no direct information as to the whereabouts of my guns.

52. At the time that inventory and equipment and product was shipped to Nashville, an intact order for the Country of Royal Brunei was received and produced by me at my other facilities prior to July, 2011; the order was ready to be delivered. The entire order intact was shipped to Nashville, GA. Royal Brunei had paid for most of the invoice, over $1.7 million dollars. The money was delivered to Cheytac in Nashville. Although Mr. McCutcheon had the order on the floor of the Cheytac facility for at least 2 years, refusing to ship under any conditions, while Attorney Stern told my Bankruptcy Attorney Plotkin that no guns existed. I had produced and delivered most everything needed to deliver the product. I was then directly told that the guns were split in half, receivers and barrels disassembled and sold off by McCutcheon to a gun company in West Virginia.

53. My claim of $50 million dollars greatly exceeds the debt limit for the filing of a Chapter 13 case and therefore the Chapter 13 Plan should not have been confirmed.

54. I had relied upon my own Chapter 7 Trustee in the District of Connecticut to protect my Bankruptcy estate's interest in this case, but said Trustee failed in his duties. He failed to file a proof of claim on time, and the Claim was later denied by this Court. I only became aware of this over the past three months.

55. Mr. McCutcheon, I strongly believe, has bank accounts over which he has dominion and control, whether under his name or under the name of Cheytac or others, which hold great wealth and that he has not disclosed. There are tens of millions of dollars missing from the Cheytac company which are unaccounted for.

56. Mr. McCutcheon illegally sold the Cheytac company along with his "partner" – lawyer, Mark Stern to the Warren-Omanoff Group for, I strongly believe, millions of dollars. The proceeds of sale are unaccounted for.

57. The Debtor, David McCutcheon, I strongly believe stole and then hid substantial assets from the estate worth tens of millions of dollars, and had that been known to the Court, the Court could not have approved confirmation of a Plan with no dividend to unsecured creditors.

## COUNT ONE – Revocation of Confirmation of Chapter 13 Plan

The Plaintiff repeats and reiterates Paragraphs 1-57 herein above.

58. Based upon the foregoing, the undersigned submits that: a.) Mr. McCutcheon has made materially false representations regarding confirmation of his Chapter 13 Plan; b.) representations were known to be false by him or made without belief of the truth, and made with reckless disregard for the truth; c.) that his representations were made to induce the Court to rely on said representations; d.) that the Court relied on the representations in confirming the Plan; and e.) as a consequence of such reliance, the Court entered the Confirmation Order.

59. The undersigned seeks revocation of the Order of Confirmation of the Plan pursuant to Bankruptcy Code §1330(a).

12

**COUNT TWO**

The Plaintiff repeats and reiterates paragraphs 1 through 59 hereinabove.

60.  As a result of the revocation of discharge, the undersigned respectfully requests that the Court dispose of the McCutcheon bankruptcy case by way of dismissal as set forth in Bankruptcy Code §1330(b).

Wherefore, the Plaintiff claims:

1. Revocation of the Order of Confirmation of Chapter 13 Plan;

2. That upon revocation of the Order of Confirmation of Chapter 13 Plan, that

   the case be in all respects dismissed;

3. For such other further relief as to law or equity may appertain.

Dated at Greenwich, Connecticut this _29_ day of October, 2017.

Corey Kupersmith, Plaintiff
41 B Byram Terrace Drive
Greenwich, CT 06831
Opus408@gmail.com
203-681-2832

**EXHIBIT 1**

## I. BACKGROUND OF COREY KUPERSMITH

I was a very successful entrepreneur, inventor, CEO of diverse and successful companies. Initially, I founded a series of medical companies which grew year by year for a period of 8 years through my efforts. The companies became one of the largest accredited targeted medical education publishing enterprises in the world; it became the standard for targeted communications. I sold these companies off at the age of 38 for $118,000,000.00. In addition, for several years prior to the sale I was earning about $10,000,000.00 per year. I had been a successful entrepreneur and was always involved as an inventor, creator and manager of companies, acting as CEO.

For most of my life I had worked on forming and operating multiple companies. One company called Cheytac Associates, LLC d/b/a Cheytac USA, was formed to develop a sniper system, which would become a total breakthrough in long distance shooting. The parent company owned by me is Greenwich Ballistics, Inc. The prior state of the art projection was 1000 yards and the technology that I developed provided for a two plus mile projection, something never thought possible. I surrounded myself with various experts, I conducted the tests, worked out the possible concepts, built the company into a successful manufacture of guns and specialized bullet. The Cheytac name became well known worldwide and the company was like no other in the world. I owned the rights to and patented the sniper bullet and held corporate secrets regarding the gun and targeting system. The Cheytac system further included manufacturing the best in class guns on the market. I developed the technology for the system which included state of the art search and targeting system. This allowed all snipers to be 28% more accurate

instantly, as well as to shoot three to four times the distance. I manufactured the ammunition to a specification that was consistent with the technology I developed. The military and history channels for example ran a special just about its breakthrough abilities as a sniper system. As it was the most powerful, longest and most accurate currently in the world, it was sought after by many NATO countries and other United States allies.

I assembled 218 acres of contiguous land at the highly desirable Martha's Vineyard, MA. I applied to develop the parcel into a golf course, which the local board denied. I then applied for and was granted a plan to subdivide the property into 26 high end residential lots with country club type amenities including horse stables, tennis courts, club house, etc.; in exchange for selling 100 acres to the locality for open space, for $18,500,000. The approved subdivision included my owning the roads and a large circular area within the subdivision roads and other open space. It took time, money and know-how to acquire the acreage and obtain the permits. It also took time, money and know-how to invent the Cheytac Sniper System and start, manage and maintain the Cheytac company.

**EXHIBIT 2**

## II.     MY SEVERE HEALTH ISSUES

I underwent an initial back surgery, a spinal fusion, in the year 2000. The operation took 8 hours and had 10 metal pieces, screws, rod and plate inserted in his back.

Sometime after the first surgery, I became increasingly ill, very quickly. Over the next 2-3 years I became very limited in my physical abilities, fatigued and was in consistent, high levels of pain. (I had played golf for 25 years, but could not swing a golf club). My surgeon did many tests, but could not fully explain the suffering. I had difficulty in standing, sitting or lying down for more than two to three hours in any position. I was debilitated to the point where I could not adequately function day to day, physically. The many tests that were run by my first surgeon team did not disclose the source of my large physical decline, which continued for 6 years. After about six years of this, I almost gave up. I was very restricted in what I could do. Everyone, including myself, could not understand what had happened to me. My wife began a divorce action, claiming that I was lazy and not paying attention to the children.

In 2007, I was contacted by another surgeon, who happened to be seeking business advice from me. (He wanted to start a medical company). This second surgeon noticed my suffering, inquired and it turned out that this doctor's specialty was back pain and surgery. He offered to see if he could help. The second surgeon reviewed my medical records, took his own tests, and told me that I required immediate surgery, as he had determined at least half of the problem, and that the other half would be discovered during the actual surgical repair of the initial misdiagnosed solid fusion. This second surgery lasted for 27 hours over two days on the operating table. I was near death. The

second surgeon had to cut out scar tissue from the first surgery, that procedure alone taking about 6 hours. Clearly the first surgeon had committed severe mal-practice. The second surgeon had to insert and replace over 30 to 40 pieces of titanium (10 pieces had to be removed), and in addition, required 4 solid fusions plus repaired all the damage the first surgeon had done. It was truly a life saving surgery. I emerged from surgery with 4 ½ feet of new scar starting at my stomach in the front and going to the back of my neck. I had 2000 stitches and approximately 1,100 staples. I almost died from from this spinal repair operation, but certainly I would have died within 6 to 12 months had I not had the surgery. The screws inserted by the first surgeon were wrong and the plates had moved constantly over the past 6-7 years. If not for my chance meeting with the second surgeon, I would not have survived.

During my seven previous years, living 24/7 with intense pain and severe restrictions, I did not know that I was suffering from an auto immune disorder called Sarcoidosis. This disease was incurred due to the faulty first surgery, after about 3 years. The disease can range from undetected to total organ failure and death. The disease affected my whole body, and organs including my brain, lungs, heart, kidneys, liver. I had major episodes of going to the emergency room and being admitted for this condition, which caused my lungs, kidneys and liver to completely shut down in organ failure. This condition went undetected from 2004 to 2009. In August 2009 I was in critical care again at the hospital and remained there for approximately 26 days. I was very lucky to have survived. This was 16 months after the second surgery. When I entered the hospital, I was informed that I was within 3 to 4 hours of death; as my kidneys were completely failed, liver failed and lungs closing.

Connecticut, and because of my condition Attorney Plotkin relied heavily on Attorney

Stern with regard to my financial information. Attorney Stern devalued my assets, said

my Cheytac company wasn't worth anything and Attorney Plotkin filed my Bankruptcy

Petition on December 29, 2012. Later in November 2014, my case was converted to

Chapter 7. I am still in Chapter 7 although I believe I should not have been in

Bankruptcy in the first place. Attorney Plotkin agrees with me and has been working

diligently to reverse the damage that Attorney Stern, together with David McCutcheon

has caused. I personally have a Motion to re-convert my case to Chapter 11 so that I can

take control of what is left and pursue claims against people who have stolen from me.

It has been a slow process in putting the pieces together since my health has

improved (although I still suffer from the disease from time to time). I had no records but

was able to accumulate information and documents from people of good will who realize

what David McCutcheon and Attorney Mark Stern did to me, in particular with regard to

Cheytac.



**Medical Offices of Dr. Steven A.R. Murphy**
1 E Putnam Ave, Greenwich, CT 06830
P: 203-340-9611 | F: 888-397-2148 | reception@greenwichdocs.com

---

To Whom It May Concern,

I've known and cared for Corey Kupersmith since 2011. He has multiple significant medical problems that went undiagnosed for years including severe diseases which left him extremely debilitated and highly confused. During my care over the last few years we have finally watched Corey turn the corner and show improvement. It is my professional medical opinion that his medical conditions that existed when I first met him had left him in no state to be able to understand legal or business affairs. Corey continues to improve significantly over the last 2 years, in my opinion, to where his previous high functioning capacity prior to his illnesses have returned to baseline. Should you have any questions I have no problem speaking with you provided Mr. Kupersmith authorizes this. I'm fully willing to undergo deposition and I'm able to provide a medical summary should this be required.

Should you have any questions please do not hesitate to reach our office 203-340-9611.

Regards,

Steven A.R. Murphy, MD

**CURRICULUM VITAE**

NAME            Steven Andrew Rivera Murphy MD

SOC. SEC. NO.        xxxxxxxxxxxx

ADDRESS      Diagnostic and Medical Specialists of Greenwich LLC
             115 East Putnam Avenue Greenwich, CT 06830

WORK PHONE        (203) 340.9611

CELLULAR  PHONE    (203) 554.8166

FAX               (888) 397.2148

E-MAIL            steven.murphy@greenwichdocs.com

HOME ADDRESS      35 Mill Stone Circle
                  Stamford CT 06903

HOME PHONE        203-554-8166

DATE OF BIRTH     29 October 1976
PLACE OF BIRTH    New Haven, Connecticut


EDUCATION

Aug 1999                B.S. (Biology, Minor Religious Studies)
        The Pennsylvania State University, College of Arts and Sciences

May 2004                M.D.
        New York Medical College, School of Medicine


POSTGRADUATE TRAINING

July 2004-November 2005        Internship (Medical Genetics/Pediatrics)
        Mount Sinai School of Medicine, NY, NY

December 2005- May 2008        Residency in Internal Medicine
        Yale School Of Medicine/Greenwich Hospital

June 2008- December 2008        Clinical Fellowship Medical Genetics
        Yale School Of Medicine/Dept of Genetics
March 2011              Senior FAA Aviation Medical Examiner

        Aviation Medical Certification Division Oklahoma City, OK

March 2007- December 2009        Founder/President
                    Helix Health and Medicine PLLC.
                    New York, NY 10021


## PROFESSIONAL SOCIETIES

Member, Obesity Action Committee
Member, Civil Aviation Medical Association (CAMA)
Member, American College of Physicians (ACP)
Member, American Society of Bariatric Physicians (ASBP)
Member, American Society of Human Genetics (ASHG)
Member, American College of Medical Genetics (ACMG)


## PROFESSIONAL SERVICES
Member, Institutional Review Board, Greenwich Hospital July 2006- May 2008
Member, Peer Review Committee, Greenwich Hospital  July 2006- May 2008
Member, Informed Cohort Oversight Board, Coriell Personalized Medicine Collaborative
March 2008-Present

Member, Pharmacogenomics Advisory Group, Coriell Personalized Medicine
Collaborative October 2009-Present
Member, Clinical Science Committee, Personalized Medicine Coalition May 2008- May
2011
Member, Greenwich Physicians Association (IPA) Board of Advisors Jan 2009-Present


## TEACHING RESPONSIBILITIES

New York Medical College
        Assistant Professor
        Department of Medicine/Department of Cell Biology and Anatomy
        Course Director, Genomics in Medicine March 2005-Present

Yale University School of Medicine
        Yale Affiliated Hospitals Speaker
                Course Director, Genomics in Medicine June 2008-Dec 2008

        Harvard School of Medicine
                Department of Continuing Medical Education
                Speaker, Genetics and Genomics October 2006-October 2007

LICENSURE              Connecticut #044806, New York #246366

BOARD CERTIFICATIONS/ELIGIBILITY

Internal Medicine, ABIM  Board Certified
Obesity Medicine, ABOM Board Certified


DEA REG. NO.      FM0922117

NAT'L PROVIDER ID   1962623165

EMPLOYMENT HISTORY


January 2007-Present        Managing Partner
                            Diagnostic & Medical Specialists of Greenwich, LLC
                            Greenwich, Connecticut

                    Founder
                        Grass Rxoots Company
                        New Canaan, Connecticut

                    Founder
                        HungoverMD IV Services
                        New York, New York

                    Founder
                        Greenwich DX Sports Labs
                        Greenwich, Connecticut

                    Equity Analyst Biotechnology
                        Genetics and Genomics
                        Chimera Research Group
                        Fort Lee, NJ

                    Primary Investigator
                        ZONE Trial
                        Pivotal Therapeutics
                        Woodbridge, ON


June 2008-December 2008        Clinical Genetics Fellow
                        Yale School of Medicine
                        New Haven CT 06510

**EXHIBIT 3**

**DBM TECHNOLOGIES, LLC**

FOREST WAY, NASHVILLE GA, 31639

229-507-8415

---

October 19, 2011

Patricia Savanella
Trinity Insurance Group, LLC
179 Wildcat Hill Road
Harwinton, CT 06791

RE: Corey Kupersmith Personal Gun Collection

Dear Ms. Savanella:

Per your request I have inspected and inventoried the 6 Safes housing Mr. Kupesmith's extensive Arms Collection located at his home at 2 Cowdray Park Drive in Greenwich Connecticut.

As you are aware, this collection consists of 140 varied high powered arms which must be crated, transported, secured and properly maintained for a period currently deemed to be 6 months. Additionally, due to the nature of the collection, BATF transfers will need to be completed per item for the initial transfer and storage, and the transfer back.

My estimate is as follows:

> $54,000 secure, and transport of 140 arms
>
> $45,450 to return the same securely to the home at the end of 6 months
>
> $30,000 to store & maintain 140 firearms for 6 months
>
> $15,000 BATF Paperwork transferring arms
>
> $144,450 TOTAL DUE AT ACCEPTANCE

Please feel free to contact me with any questions.

Thank you,


David B. McCutcheon

| No. | Qty | Description | Serial |
|---|---|---|---|
| X 49. | 20K | Colt AR-15 | SP03772 |
| X 50. | 10K | Sauer 90 .375 Bolt Action Rifle | K11333 |
| X 51. | 2K | H&K 9mm Mini Gun | 11687 |
| X 52. | 5K | John R. Stengler no 77/45 Rifle | 1434 |
| X 53. | 1K | Mossberg Maverick 12ga Pump Mini Shotgun | MV64S481 |
| X 54. | 1K | Mossberg Maverick 12ga Pump Mini Shotgun | MV64S481 |
| X 55. | 99K | Stoner 223 cal. Auto Rifle | 02318144 |
| X 56. | 30K | M50 Light Machine Gun | 740-11036 |
| X 57. | 2K | Ruger 77/44 Bolt Action Rifle | 740-11036 |
| X 58. | 2K | Ruger 77/22 Bolt Action Rifle | RJ100702 |
| X 59. | 5K | Sauer / Arms 091 Sporter 308 Rifle | G707996 |
| X 60. | 5K | Springfield Socom 16 Semi Auto Rifle | 172996 |
| X 61. | 7K | Cheytac M310 Sniper Rifle | CAK0001 |
| X 62. | 7K | Cheytac M310 Sniper Rifle | 9041001 |
| X 63. | 5K | RND 800 308 Semi Auto Rifle | 175245 |
| X 64. | 7K | Cheytac 308 Semi Auto Rifle | 9041001 |
| X 65. | 15K | FWA 5.56mm Semi Auto Rifle | 28034 |
| X 66. | 1K | CAT 7.62 Semi Auto Pistol | 13385 |
| X 67. | 2K | Winchester model 70 .300 cal Bolt Action | CR00602 |
| X 68. | 5K | Cheytac M310 Ata Sniper Rifle | CheytacO12 |
| X 69. | 1K | Chezian Arul 45 Semi Auto Pistol | CheytacO13 |
| X 70. | 5K | Ruger 45 cal Semi Auto Pistol | 2205-61537 |
| X 71. | 5K | Clock 45 cal Semi Auto Pistol | CheytacO11 |
| X 72. | 1K | Clock .22 cal Semi Auto Pistol | 1E1A240 |
| X 73. | 1K | Clock 19 9mm Semi Auto Pistol | G9752 |
| X 74. | 5K | Caspian .22 240 cal Semi Auto Pistol | G9752 |
| X 75. | 5K | Caspian 45 cal Semi Auto Pistol | CheytacO04 |
| X 76. | 1K | Caspian 45 cal Semi Auto Pistol | CheytacO14 |
| X 77. | 1K | Ruger 77/44 Bolt Action Rifle | 740-127941 |
| X 78. | 20K | Brown colored Semi Auto Rifle (no brand) | C5250402 |
| X 79. | 1K | Remington model 700 Bolt Action Sniper Rifle | 9980097 |
| X 80. | 5K | light brown colored Ivrestan Bolt Action Rifle | 2941590 |
| X 81. | 5K | RND 5.56 cal 110 12gauge Shotgun | 5848484 |
| X 82. | 5K | Remington no 700 Chandler Sniper Rifle | 4484 |
| X 83. | 10K | Otto 20 ga 2 barrel (SbS) Shotgun | 4951058 |
| X 84. | 5K | RND 308 Semi Auto Rifle | 175230 |
| X 85. | 5K | Springfield Semi Auto Rifle | G634772 |
| X 86. | 5K | Remington no 700 Sniper Rifle | CAK007 |
| X 87. | 10K | Cheytac no 300 Sniper Rifle | |
| X 88. | 5K | FN Brown Cobra Pistol (will use) | |
| X 89. | 5K | FN Brown Cobra Pistol (will use) | |

| | | | | |
|---|---|---|---|---|
| X 49. | 20K | Colt AR-15 | SP63772 | GS |
| X 50. | 10K | Sauer 90 .375 Bolt Action Rifle | K11332 | S2 |
| X 51. | 2K | H&K 9mm Mini Gun | 11687 | GS |
| X 52. | 5K | John R. Stemple mo 77/45 Rifle | 1434 | GS |
| X 53. | 1K | Mossberg Maverick 12ga Pump Mini Shotgun | MV64648J | GS |
| X 54. | 1K | Mossberg Maverick 12ga Pump Mini Shotgun | MV64822I | GS |
| 55. | 99K /12K | Stoner 223 oak Auto Rifle | 002781 | GS |
| X 56. | 80K | M60 Light Machine Gun | 7792097-7269239 | S2 |
| X 57. | 2K | Ruger 77/44 Bolt Action Rifle | 740-11036 | S3 |
| X 58. | 2K | Ruger 77/22 Bolt Action Rifle | RI00702 | GS |
| X 60. | 5K | Centry Arms 091 Sporter 308 Rifle | G30796 | S1 |
| X 61. | 5K | Springfield Socom 16 Semi Auto Rifle | 172996 | S3 |
| X 62. | 7K | Cheytac M310 Sniper Rifle | CAK0001 | S2 |
| X 63. | 5K | RND 800 308 Semi Auto Rifle | 4951049 | S2 |
| X 64. | 5K | Cheytac 308 Semi Auto Rifle | 9041001 | S2 |
| X 65. | 15K | PWA 5.56mm Semi Auto Rifle | 28084 | S3 |
| X 66. | 1K | CAI 7.62 Semi Auto Pistol | LB8675 | S2 |
| X 67. | 2K | Winchester model 70 .300 cal Bolt Action | G2404872 | S2 |
| X 68. | 5K | Cheytac M310 Tac Sniper Rifle | CK0001 | S2 |
| X 69. | 5K | Caspian Arms 45 Semi Auto Pistol | Cheytac013 | S1 |
| X 70. | 1K | Ruger 22 cal Semi Auto Pistol  225-61537 & silencer P1716 | | BS |
| X 71. | 5K | Caspian 45 Semi Auto Pistol | Cheytac 011 | S1 |
| X 72. | 1K | Glock 22 40 cal Semi Auto Pistol | 1BUA240 | GS |
| X 73. | 1K | Glock 19 9mm Semi Auto Pistol | G9752 | S1 |
| X 74. | 5K | Caspian 45 cal Semi Auto Pistol | Cheytac004 | S1 |
| X 75. | 5K | Caspian 45 cal Semi Auto Pistol | Cheytac014 | S1 |
| X 76. | 1K | Ruger 77/44 Bolt Action Rifle | 740-03794 | S3 |
| X 77. | 1K | Brown colored Semi Auto Rifle (no brand) | KM1094 | N/A |
| X 78. | 20K | Remington model 700 Bolt Action Sniper Rifle | C6292403 | S2 |
| X 79. | 1K | Light brown colored wooden Bolt Action Rifle | 996057 | S3 |
| X 80. | 5K | RND 5.56 cal Semi Auto Rifle | 2941590 | S2 |
| X 81. | 5K | Remington mo 1100 12 ga Auto Shotgun | M134200V | GS |
| X 82. | 20K | Remington mo 700 Chandler Sniper Rifle | B6486484 | S2 |
| X 83. | 10K | Otto 20 ga 2 barrel (SbS) Shotgun | 4484 | GS |
| X 84. | 5K | RND 308 Semi Auto Rifle | 4951058 | S2 |
| X 85. | 4K | Springfield Semi Auto Rifle | 175230 | S3 |
| X 86. | 5K | Remington mo 700 Bolt Action Rifle | G6347772 | S2 |
| X 87. | 10K | Cheytac mo 300 Sniper Rifle | CAK807 Georgia | |
| X 88. | ~~50K~~ 5K | Ed Brown Cobra Pistol (will use) | | BS |
| X 89. | ~~50K~~ 2K | Kimber Pistol (will use) | | S1 |

Bedroom Safe        BS
Garage Safe         GS
Safe Next to wall   S1
Safe in middle of 3 S2
Safe Next to pool table S3
Safe in Garage      GS

484k

730k

## FIRE ARM COLLECTION:          100K+

| Value | Description | Serial # | |
|-------|-------------|----------|---|
| 1. 200K | Herstal mo MK46 5.56mm Semi-Automatic Weapon | FN008972 | GS |
| 2. 150K | Herstal minimi 5.56mm Semi-Automatic Weapon | FN008959 | GS |
| 3. 150K | Herstsal minimi 5.56mm Semi-Automatic Weapon | FN008971 | GS |
| 4. 150K | Herstal minimi 5.56mm Semi-Automatic Weapon | FN008906 | GS |
| 5. 150k | Herstal minimi 5.56mm Semi-Automatic Weapon | FN008974 | GS |
| 6. 150K | Herstal minimi 5.56mm Semi-Automatic Weapon | FN008958 | GS |
| 7. 250K | Herstal MK 46 5.56mm Semi-Automatic Weapon | FN008957 | GS |
| 8. 150K | M-249 Semi-Automatic Weapon | CO9576 | GS |
| 9. 150K | Merstal minimi 5.56 Semi-Automatic Weapon | FN008944 | GS |

IN garage safe (GS)

$1.5 m

## FIRE ARM COLLECTION:                99K-

| Value | Description | Serial # |
|-------|-------------|----------|
| 10. 40K. | HK 53 cal .223 Rifle | A129234 GS |
| 11. 2K | Ruger 77/44 Rifle | 74012168 BS |
| 12. 3K | Winchester 458 Rifle | 131-47490 BS |
| 13. 35K | Thompson Sub-Machine Gun 45 cal | 905A BS |
| 14. 20K | H&K MP5k | 4327 GS |
| 15. 2K | Kobra-Carry | 0955 BS |
| 16. 1K | Browning 9mm Auto Pistol | 245NX58414 BS |
| 17. 1K | Ruger MK II 22. cal Long Rifle | 225-61362 & silencer # P1715 BS |
| 18. 1K | Ruger 22 cal Long Rifle (folding stock) | 115-67765 S |
| 19. 2K | 44WCF Rifle | CAT5988 S |
| 20. 3K | Browning mod 71 348 cal win Rifle | 02565PR1C7 S3 |
| 21. 1K | Ruger 77/22 Rifle | 702-74921 S |
| 22. 5K | Remington Modle 700 Rifle | F6265246 S |
| 23. 2K | H&K JMBH 9mm Auto Pistol | 44698 BS |
| 24. 3K | H&K P7M13 9mm Auto Pistol | 17-82145 BS |
| 25. 1K | Beretta Model 92FS 9mm Auto Pistol | BER227844 BS |
| 26. 2K | Scatter Gun Tech. 12 ga. Shotgun | GS |
| 27. 1K | Ruger Shotgun | 702-43785 GS |
| 28. 1K | Auto & Burglar Gun 2 barrel Short Gun | B9364 GS |
| 29. 1K | Colt MK IV Ser 80 | SS17555E BS |
| 30. 1K | Freedom Arms Prem Mo 83 Revolver | I-CAK007 BS |
| 31. 2K | Kimber 45 cal Auto Pistol | KPE0531 BS |
| 32. 3K | H&K Mark 23 45 cal Auto Pistol | 23-3377 BS |
| 33. 2K | Uneril Ordinance 45 cal Auto Pistol | U0C0048 GS |
| 34. 2K | Winchester 44 cal Revolver | P13889 BS |
| 35. 1K | Glock 33 357 Auto Pistol | CFRA440US BS |
| 36. 2K | STI International Ed Brown 45 Auto Pistol | SAS6375 BS |
| 37. 4K | Briley 45 cal Auto Pistol | CHEYTAC007 BS |
| 38. 2K | Spinfield 45 cal Model 1911 Auto Pistol | N491891 SY |
| 39. 2K | FN Herstal 57 Auto Pistol | 386101834 BS |
| 40. 2K | Mossberg Mav. Mo88 12 GA Sawed Off Shotgun | MV64854Y GS |
| 41. 1K | Glock 23 40 cal Auto Pistol | ENG133 BS |
| 42. 2K | Reminton Magnum 1100 20ga Shotgun | R246055U S3 |
| 43. 1K | Bounty Hunter II 12 ga. 2 barrel Shotgun | 1ZH-43K S3 |
| 44. 15K | Sterlingworth 2 barrel Shotgun (ShS) | 79780 BS |
| 45. 2K | Remington mo1 100 LT-20 Shotgun | N479954K S3 |
| 45. 1K | Reminton 12ga Shotgun Under/Over | OU-31036 S |
| 46. 25K 2K Glock 23 | | 1EPP214US BS |
| 47. 9K 500 Taser Gun X 26C | | X00-068898 N/A |
| 48. 25 000 STI Heinke Pistol | | L82306 BS |

Garge safe GS
24K { safe 1 - Next to Wall
Basement { safe 2 -
Safes { safe 3 - Next to pool treble
Bedroom safe BS

**EXHIBIT 4**





SEIZE THE DISTANCE® ——————————— TECHNOLOGY OVER TRADITION®

May 22, 2014

Dear Corey:

As you know our Amended and Restated Operating Agreement of January 14, 2013 provides that if any member files or is adjudicated bankrupt, the Company has a right to disassociate said member (see Article IX-Paragraph 9.1) from the Company.  Further, you have breached your agreement of contribution with the company in that the original amount to be received by the Company was at least $600,000 (from the Jamison settlement) to fund a liability for production of ammunition and firearms to Brunei of approximately $887,000.   We later learned that the liability to Brunei was really $550,000 greater and now they are expecting $1.3 Million in goods, which would be highly unprofitable for the Company.  In accordance with the terms of this letter, we disclaim any further interest in the Jamison settlement funds, and you will be responsible for the Brunei liability, if any.

We have also been sued by various creditors of yours and your companies, which have also resulted in substantial legal fees and potential liability.  Furthermore, most of the intellectual property, including trademarks on the name Cheytac, were not effective and had to be completely refiled.  Accordingly, your membership in the Class C membership interest in Cheytac USA, LLC is hereby terminated.

Very truly yours,

David B. McCutcheon
Operating Manager

SUPERIOR TECHNOLOGY | UNSURPASSED CAPABILITY

CHEYTAC USA, LLC · 110 EAGLE AVENUE · NASHVILLE, GA 31639
TOLL FREE: 855-CHEYTAC · PH: 229-686-3219 · FX: 229-686-1941          WWW.CHEYTAC.COM

**EXHIBIT 5**



DISTANCE | POWER | ACCURACY

By Email
Ajay Gupta
SRG TECHNO (P) LTD.
Fifth Floor
Omaxe Gurgaon Mall
Sohna Road, Gurgaon-122001
Haryana, India

RE: India_CN-12-036/050355209

Dear Mr. Gupta:

As you know we are currently fulfilling an order for ammunition and firearms for the government of India under a written purchase order totaling US$1.6 Million. This order is secured by an irrevocable letter of credit drawn on the Bank of India, New York. You have offered and we hereby accept your assistance in financing the production of this order as follows:

1. You will wire Cheytac USA, LLC the sum of US$200,000.00

2. We will use these funds solely for purchase of materials and labor in fulfilling the above reference purchase order.

3. Return of your funds shall be secured by a simultaneous interest and present assignment of the proceeds of the letter of credit.

4. We shall return the funds advanced, including any additional advances, if any, within five (5) days of the delivery of the goods and the initial payment of 90 percent of the LC amount is received.

5. You have agreed that this advance will be interest free until the extended funding date for the order and letter of credit (currently _____ ), and if not paid thereafter at the rate of 2 % per month

6 ) Incase on any problem arising out the contractual obligation on the part of cheytac, SRG "s money will be returned irrespective at that stage

If this meets with your understanding and agreement, please countersign this letter and contact the undersigned for wire instructions for the funds.

Very truly yours,

DAVID MCCUTCHEON, Operating Manger of
DBM TECHNOLOGY, LLC, as Operating Manager of
CHEYTAC USA, LLC

10/18/2012

AGREED AND ACCEPTED THIS ___ DAY OF AUGUST, 2012.

AJAY GUPTA          10/09/12

Cory Kpesmith Dettie S Lindsey
10/9/12

SUPERIOR TECHNOLOGY | UNSURPASSED CAPABILITY

CheyTac USA, LLC - 541 Hazel Avenue - Nashville, GA 31639
Toll Free: 855-CheyTac - Ph: 229-686-3219 - fx: 229-686-3220

www.cheytac.com

**EXHIBIT 6**

**Greenwich Ballistics**

September 8, 2011

Jamison International V, LLC
c/o Marc Jamison, Registered Agent
3551 Mayer Avenue
Sturgis, SD  57785-8001

*[handwritten note: Written by Mae & Fran Christine Mae told teller me not to tell me of Corey]*

Re:    **Loans from Greenwich Ballistics, LLC**

Dear Mr. Jamison:

As a member of Jamison International V, LLC (the "Debtor"), Greenwich Ballistics, LLC ("Greenwich") has made loans in the outstanding principal amount of **$2,313,104.33** as reflected under "Long Term Liabilities" and "Short Term Liabilities" on the balance sheet of the Debtor's financial statements for September 8, 2011 (the "Loans").  I am writing to you to advise you that you have failed to repay the Loans and that Greenwich hereby demands repayment of the Loans in full.  Accordingly, Greenwich hereby declares all amounts payable under the Loans, including accrued interest, immediately due and payable.

Please repay the Loan, with interest, no later than September 16, 2011.  If Greenwich does not receive payment in full by that date, Greenwich will be forced to consider taking legal action and/or exercising any other legal remedies it may have.

Nothing in this letter should be construed as waiving any rights Greenwich may have to exercise any other remedy or to take any other legal action.  Nor does Greenwich waive any rights to make a claim at a later date for additional sums due under the Loans or for other amounts owed by the Debtor to Greenwich.

Our legal counsel in this matter is Frances Codd Slusarz at Fox Rothschild, LLC, One Landmark Square, 21st Floor, Stamford, Connecticut 06901, 203-425-1528.  Please contact our counsel directly to arrange to make payment and resolve this matter.

Very truly yours,

Corey A. Kupersmith

cc:    Frances Codd Slusarz, Esq.

Corey A Kupersmith *managing director*

Greenwich Ballistics *Two Cowdray Park Drive, Greenwich, CT 06831    GreenwichBallistics.com*
office: 203.629.0020    cell: 203.249.3966    fax: 203.629.0030

**EXHIBIT 7**

# Statement of Account

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS OR ELECTRONIC TRANSFER ERRORS.

SEND OR DIRECT
INQUIRIES TO:

## Nashville Credit Union
P.O. BOX 456
NASHVILLE, GA 31639

DIRECT INQUIRIES TO:
229-686-7611

GREENWICH BALLISTIC INC
2 COWDRAY PARK DRIVE
GREENWICH, CT 06831

Account Number: **#6538**
Effective Dates: 6/1/11 to 6/30/11
Page Number: Page 1 of 2



### A Summary of Open Shares

| Suffix | TaxType | TypeDescription | Maturity Date | Ending Balance | YTD Dividends |
|---|---|---|---|---|---|
| 0 | Taxable | SHARES | | 0.00 | 0.00 |
| 9 | Taxable | SHARE DRAFT | | 28,497.00 | 0.00 |
| | | | | **28,497.00** | |

### Share Details

#### Suffix # 0 – SHARES

| Posting Date | Effective Date | Description | Penalties, Fees, or Taxes | Amount | Balance |
|---|---|---|---|---|---|
| | | Previous Balance | | | 0.00 |
| 6/30/11 | 6/30/11 | Dividend | 0.00 | 0.00 | 0.00 |
| | | *Dividend represents an annual percentage yield earned of 0.00% for a 91 day period.* | | | |
| | | New Balance | | | **0.00** |

#### Suffix # 9 – SHARE DRAFT

| Posting Date | Effective Date | Description | Draft Number | Amount | Balance |
|---|---|---|---|---|---|
| | | Previous Balance | | | 30,278.50 |
| 6/8/11 | 6/8/11 | Wire Out Withdrawal | | -5,000.00 | 25,278.50 |
| 6/8/11 | 6/8/11 | Wire Fee | | -15.00 | 25,263.50 |
| 6/28/11 | 6/28/11 | Deposit | | 3,300.00 | 28,563.50 |
| 6/30/11 | 6/30/11 | Withdrawal | | -60.00 | 28,503.50 |
| 6/30/11 | 6/30/11 | Monthly Main Share Draft Fee | | -6.50 | 28,497.00 |
| | | New Balance | | | **28,497.00** |

## Statement of Account

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS OR ELECTRONIC TRANSFER ERRORS.

**Nashville Credit Union**
P.O. BOX 456
NASHVILLE, GA 31639

DIRECT INQUIRIES TO:

229-686-7611

GREENWICH BALLISTIC INC          Account Number - 6538          6/1/11 to 6/30/11          Page 2 of 2

**YTD**   2011 Year To Date Information

| Total Taxable Dividends For 2011 | Total Other Dividends For 2011 | Total Backup Withholding For 2011 | Total Interest Charges For 2011 | Total Loan Fees For 2011 | Total IRA Federal Withholding For 2011 |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |

*YTD information may include closed suffixes not itemized on this statement.*

**News**

ONLINE BILL PAY AVAILABLE THROUGH ONLINE BANKING - CALL KYLE AT EXT. 41 TO GET SET UP!

## Law Offices of Ellery E. Plotkin, LLC

■
■

777 Summer Street, 2nd Floor
Stamford, Connecticut 06901

This firm represents people who file bankruptcy
and therefore we are a debt relief agency.

Telephone: 203-325-4457
Facsimile: 203-325-4376
eplotkinjd@aol.com

October 30, 2017

*OVERNIGHT COURIER*

Clerk of the U.S. Bankruptcy Court
United States Bankruptcy Court
901 Front Avenue
Columbus, GA 31901

**RE:   *David McCutcheon***
**       *Chapter 13 Case No. 16-70733***

Dear Sir or Madam:

I am writing this letter on behalf of Mr. Corey Kupersmith, who is here enclosing an
Adversary Complaint, Cover Sheet and filing fee of $350.00.

As Mr. Corey Kupersmith is Pro Se and not an attorney, he is asking that the enclosed
Adversary Proceeding be paper filed immediately upon your receipt.

Judge Laney directed that if he is to file an Adversary Proceeding that it be filed by
October 31.

**Please send me the Summons by sending to Mr. Kupersmith at his address: 41 B
Byram Terrace Drive, Greenwich, CT 06831, and also to me at the address as stated
on this letterhead, or my email address "eplotkinjd@aol.com".**

Thank you for giving this your kind attention.

Very truly yours,

Ellery E. Plotkin

EEP:aem
Enclosures