**SIGNED this 15 day of March, 2019.**



_____
**John T. Laney, III
United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| **DAVID B. MCCUTCHEON** | ) | Chapter 13 |
| Debtor. | ) | Case No. 16-70733-JTL |
| | ) | |
| | ) | |
| **COREY KUPERSMITH**, | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | |
| | ) | Case No. 17-7025 |
| **DAVID B. MCCUTCHEON**, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION DENYING
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter came before the Court on a Motion for Summary Judgment ("the Motion") filed by the Defendant ("McCutcheon"). The Plaintiff ("Kupersmith") brought this adversary proceeding under 11 U.S.C. § 1330(a), seeking revocation of the Court's August 8, 2018 order confirming McCutcheon's Chapter 13 plan (Bankr. Doc. No. 24).

In the Motion, McCutcheon makes four arguments for the action's dismissal. The presented arguments concern McCutcheon's defenses and are primarily legal in nature. The Court, having heard oral arguments, considered the applicable law, and reviewed the record in this case, concludes the Motion should be denied.

**I.    FACTS**

This case involves the parties' investments in a sniper-rifle system manufactured by Cheytac USA, LLC ("Cheytac"). Kupersmith's involvement with Cheytac began prior to the founding of the company. Around 2001, Kupersmith, along with other partners, began to produce the sniper-rifle system through machining and ammunition companies that Kupersmith came to own and control. (*See* Def's Resp. Mot. for Summ. J., Ex.1 [hereinafter "Kupersmith Affidavit"], ¶ 9). In the spring of 2011, Kupersmith met McCutcheon at a business meeting. McCutcheon expressed interest in managing and investing in Kupersmith's companies and Kupersmith was agreeable. (Kupersmith Affidavit, ¶¶ 13-14).

The parties formed Cheytac later in 2011 and moved much of the company's operations to Nashville, Georgia. Under the terms of Cheytac's new operating agreement, McCutcheon would manage the company and hold its only voting interest and Kupersmith would hold a non-voting minority interest. (Id., Ex. F). Additionally, the operating agreement contained a disassociation clause that divested a member if the member filed for bankruptcy. (Id.).

Between 2001 and 2011, Kupersmith experienced two significant personal difficulties. First, Kupersmith suffered a debilitating back injury and a severe autoimmune disease. These health problems left Kupersmith bed ridden and unable to perform basic tasks for long periods of time between 2007 and 2014. (*See* Id., ¶ 10, Ex. A). As a result, Kupersmith delegated much of

his financial responsibilities to agents acting on his behalf. Additionally, Kupersmith was involved in a highly contested divorce proceeding.

Kupersmith retained attorney Mark Stern ("Stern") to assist him in his divorce proceeding and in transactions concerning his businesses. Stern's involvement with Cheytac's formation is unclear. The record is clear that, once the company was formed, Stern became involved with its operations and with McCutcheon's management. (*E.g.*, Def's Resp. Mot. for Summ. J., Ex. 2 [hereinafter "P. Savanella Affidavit"], ¶33-34; Def's Resp. Mot. for Summ. J., Ex. 4 [hereinafter "Coury Affidavit"], ¶ 12). He attended multiple corporate meetings on Kupersmith's behalf and represented himself as Kupersmith's agent at industry meetings. (Coury Affidavit, ¶ 9-11). The record contains multiple allegations that Stern, with this control, acted inappropriately to benefit himself. (*E.g.*, P. Savanella Affidavit, ¶¶ 29-30). Moreover, Kupersmith and other individuals claim that Stern became controlling with information regarding Kupersmith's finances. (Kupersmith Affidavit, ¶ 14; Coury Affidavit, ¶¶ 12-13). Stern demanded the turnover of many of Kupersmith's files and limited other's access to this information. (P. Savanella Affidavit, ¶¶ 33-34). Stern directed Kupersmith's various business contacts to communicate directly with him and not to contact Kupersmith directly. (Id.; Coury Affidavit, ¶ 12). Stern even released some of Kupersmith's associates from their responsibilities to maintain Kupersmith's financial interests. (P. Savanella Affidavit, ¶ 34).

In October 2011, Kupersmith's home was damaged by Hurricane Irene. At his insurer's encouragement, Kupersmith sought to transport his large personal collection of guns and ammunition to Cheytac's offices in Nashville, Georgia. (Kupersmith Affidavit, ¶¶ 18-19). McCutcheon personally transferred the weapons and agreed to store the weapons for a fee. (Id., Ex. B). Kupersmith also claims to have given McCutcheon two expensive watches. (Id., ¶ 21).

3

In December 2012, Kupersmith filed a Chapter 11 bankruptcy. (P.'s Mot. for Summ. J., Ex. 6). In his schedules, he listed few items of personal property and did not disclose the firearms and watches provided to McCutcheon after Hurricane Irene. (Id.). During the course of the § 341(a) meeting, however, Kupersmith did discuss the transfer of the firearms, though his recollection was often confused and conflicting. At one hearing, Kupersmith explained that the guns were given to McCutcheon for payment of McCutcheon's salary. (P.'s Mot. for Summ. J., Ex. 13, pgs. 54-55). Later, Kuppersmith stated he gave the guns to Cheytac in exchange for the company assuming his personal obligations. (Id., Ex. 14, pgs. 68-69). Kupersmith also stated that the value of the gun collection was less than $100,000 (Id., Ex. 13, pg. 54), but later he testified that he was unable to estimate the value of the guns. While Kupersmith did state that he sold two watches before filing, he did not mention giving McCutcheon any watches. (Id., Ex. 13, pg. 50).

In May 2014, McCutcheon sent a letter to Kupersmith claiming to have triggered the dissociation clause, thereby divesting Kupersmith of his interest in Cheytac. (Kupersmith Affidavit, Ex. G). The record contains statements from multiple affiants that, during this period of time, Cheytac had large profitable accounts with numerous foreign governments. (Coury Affidavit, ¶ 7, Ex. A). At least one affiant states Cheytac was an attractive investment and had considerable value to potential investors. (Id. ¶ 14, Ex. B).

In November 2014, the bankruptcy court converted Kupersmith's Chapter 11 proceeding to one under Chapter 7. (P.'s Mot. for Summ. J., Ex. 4). Ronald Chorches ("Chorches") was appointed as the Chapter 7 trustee. Kupersmith, then recovering from his illness, informed Chorches that he believed Stern was acting against his interest and that he thought the assets listed in his schedules were significantly undervalued. In March 2017, Kupersmith filed amended schedules disclosing his interest in the weapons transported to Cheytac's office and other claims

4

against McCutcheon. (Kupersmith Affidavit, Ex. N). In May, 2016, Chorches filed an adversary proceeding against McCutcheon and other defendants seeking recovery of Kupersmith's interest in Cheytac. (16-05033-JAM, Bankr. Conn. May 20, 2016).

On July 12, 2016 McCutcheon filed a Chapter 13 bankruptcy petition. (Bankr. Doc. No. 1). In his schedules, McCutcheon listed $195,590 in assets. (Id., pg. 8). As for liabilities, he disclosed $163,400 in secured debts and $225,983 in unsecured debts. (Id.). The majority of the unsecured debts arose from McCutcheon's $186,000 liability to Citizens Bank, which McCutcheon described as "Contingent Liability [on] Corporate Debt." (Id. pg. 23).

The petition makes several references to McCutcheon's involvement with Cheytac. Schedule B lists possible actions for breach of contract against Cheytac and subsequent investors in Cheytac. (Id. pg. 14). Schedule E/F estimates disputed liabilities to Cheytac at $100. (Id. pg. 23). A $100 liability to Chorches is also disclosed. Like the Cheytac debts, McCutcheon disputes this liability. (Id. 25). McCutcheon's Statement of Financial Affairs discloses transfers of Cheytac stock to subsequent investors, each occurring in September 2015. (Id. pg. 39). The schedule does not disclose a value of McCutcheon's interest in the company at the time of the transfer.

Cheytac filed an adversary proceeding in McCutcheon's bankruptcy case, seeking an order determining McCutcheon's debt to Cheytac was non-dischargeable pursuant to § 523(a)(4).[1] (Bankr. Doc. No. 11). A month after filing the dischargeablity complaint, Cheytac filed a claim for $0 and stated the basis for the claim was "fraud, embezzlement, fraudulent misrepresentation, fraudulent concealment of liabilities, conversion, theft." (Bankr. Claim No. 9-1). Ultimately, the parties settled the dispute and signed a consent order dismissing the

---

[1] The complaint also sought a denial of discharge under § 727; however, as McCutcheon filed a Chapter 13 petition, § 727 was inapplicable.

5

complaint. Chorches filed a $500,000 proof of claim in the bankruptcy proceeding arising from McCutcheon's liability in the Connecticut adversary proceeding. (Bankr. Claim No. 10-1). The claim, however, was filed after the bar date and, after McCutcheon objected to the claim, the Court entered an order disallowing the claim. (Bankr. Doc. No. 17).

McCutcheon's Chapter 13 plan provided to pay US Bank's $6,341 claim, secured by a 2013 Dodge Charger, and to pay priority claims of the Internal Revenue Service ($25,944) and the Georgia Department of Revenue ($4,676). The plan provided a 0% dividend to non-priority unsecured creditors. Only the Chapter 13 Trustee filed an objection to the Chapter 13 plan. (Bankr. Doc. No. 10). On August 8, 2017, the Court entered an order confirming the plan ("the Confirmation Order"). (Bankr. Doc. No. 24).

Only twelve days after entry of the Confirmation Order, Kupersmith filed a motion to reconsider the Court's entry of the order. (Bankr. Doc. No. 26). The Court denied this motion, as Federal Rule of Bankruptcy Procedure 7001 requires an action to revoke a discharge order be filed as an adversary proceeding. (Bankr. Doc. No. 36).

On October 31, 2017, Kupersmith filed this adversary proceeding *pro se*. (A.P. Doc. No. 1). Though Kupersmith later hired counsel, the *pro se* compliant remains the operative pleading. In it, Kupersmith alleges that McCutcheon fraudulently misstated his assets to obtain an order confirming his Chapter 13 plan. Specifically, he alleges McCutcheon failed to disclose (i) bank accounts (Id., ¶ 55), (ii) the proceeds of his sale of equity in Cheytac (Id., ¶ 56), and (iii) the proceeds from the sale of other assets (Id., ¶ 57). Kupersmith asks that the Court revoke the Confirmation Order (Id., ¶ 58-59) and dismiss McCutcheon's bankruptcy petition (Id., ¶ 60).

## II.     SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue of fact is material if it affects the outcome of the case as identified by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute means that "more than some metaphysical doubt [exists] as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine dispute exists if a reasonable fact finder could find in favor of the non-moving party based on the evidence. *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the burden of showing the basis for its motion and "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact" and warrant a judgment as a matter of law. *Celotex Corp., v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Further, this Court must view the evidence "in the light most favorable to the non-moving party." *Jordan v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996); *see also Info. Sys. & Network Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (noting that the court must "resolve all reasonable doubts about the facts in [the non-moving party's] favor").

### III.   ANALYSIS

As previously mentioned, the Motion makes four arguments for the dismissal of this case. The subsections below discuss these arguments in turn.

### A. Res Judicata and Collateral Estoppel

McCutcheon first argues that, because the Confirmation Order is a final order, Kupersmith's claim is barred by the doctrines of collateral estoppel and res judicata. Of course, the confirmation of a plan binds the debtor and each of his creditors to the plan's provisions. 11 U.S.C. § 1327(a). Even more broadly, a confirmation order in a Chapter 13 proceeding also precludes any creditor's objection to the plan's compliance with the Code, regardless of whether the objection was actually litigated and decided during the confirmation hearing. *Universal Am. Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 830 (11th Cir. 2003). Regardless, § 1330 provides a vehicle for a creditor to revoke a confirmation order—and the accompanying res judicata and collateral estoppel effects—when the debtor obtained the order through fraud and the revocation action is filed within 180 days of the order's entry. The Code, thereby, provides an exception to the finality of a Chapter 13 confirmation order.

Nevertheless, McCutcheon argues that, because Kupersmith was aware of the frauds alleged in this case but failed to raise those objections before the entry of the Confirmation Order, Kupersmith should not be permitted to exercise this statutory right. McCutcheon relies on the case, *Estate of Bright v. Ritacco (In re Ritacco)*, 210 B.R. 595 (Bankr. D. Or. 1997), to support this argument. There, the bankruptcy court dismissed a similarly situated § 1330 action because the court reasoned that allowing a party to revoke confirmation based on fraud known the party before confirmation would "lead to the illogical conclusion that Congress intended that creditors could lay in the weeds and wait to see if a debtor's Chapter 13 plan could gain confirmation." *Id.* at 589. Thus, the *Ritacco* Court made its decision based on its determination of Congressional intent.

While this Court sees the appeal of the *Ritacco* Court's interpretation, Eleventh Circuit decisions clearly prevent the Court from coming to the same conclusion here. First, the plain

8

language of the statute is unambiguous: there is no limitation that the party seeking revocation must have the discovered the fraud after the entry of the confirmation order. The section's only limitation is that the revocation action must be filed within 180 days of a confirmation order's entry. In contrast, § 1328 only allows an interested party to revoke the entry of a discharge order based on the debtor's fraud if the party requesting revocation "did not know of such fraud until after [the] discharge was granted." 11 U.S.C. § 1328(e)(2). Had Congress intended to impose a similar limitation on the revocation of a confirmation order in § 1330, it clearly knew how to do so. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1168 (11th Cir. 2003) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quoting *U.S. v. Wong Kim Bo*, 472 F.2d 720, 722 (5th. Cir. 1972)).

Secondly, § 1330's predecessor, 11 U.S.C. § 671 (1978), required that the alleged fraud to be discovered "since the confirmation of the plan" to revoke a confirmation order. In amending the section by omitting that requirement and adding a requirement that the revocation action be filed 180 days after the entry of the confirmation, Congress made substantive changes to the statute. Accordingly, courts should interpret the statute according to the new language and as if Congress had intended to eliminate any prior requirements. *See Kaye v. Blue Bell Creameries, Inc. (In re BFW Liquidation)*, 899 F.3d 1178, 1191 (11th Cir. 2018) ("[C]hanges in statutory language generally indicate an intent to change the meaning of the statute.") (quoting *Edwards v. Prime Inc.*, 602 F.3d 1276, 1299 (11th Cir. 2010)). Therefore, the Court rejects McCutcheon's res judicata and collateral estoppel arguments.

**B. Standing**

McCutcheon also argues that because Kupersmith's Chapter 7 trustee filed an untimely claim that this Court disallowed, Kupersmith is not "a party in interest" as required by § 1330 and accordingly, lacks standing to assert this action. The phrase "a party in interest" is not defined in the Code, though this Court, and others, have interpreted the phrase to require the party to have a "pecuniary interest" in the proceeding. *See Old Republic Ins. Co. v. Farmer (In re Farmer)*, 324 B.R. 918, 920 (Bankr. M.D. Ga. 2005). McCutcheon argues a party with a disallowed claim has no such interest. To support this argument, he cites a number of cases interpreting the phrase in the context of § 1324(a), which permits only "a party in interest" to object to the confirmation of the Chapter 13 plan. In those cases, the courts held that a party with a disallowed claim lacks standing to assert an objection because the party cannot receive a distribution under the Chapter 13 plan and therefore has no interest in objecting to the proposed distribution. *See, e.g.*, *In re Larson*, 245 B.R. 609, 614 n.1 (Bankr. D. Minn. 2000) ("Without an allowed claim, most courts hold that a party generally does not have the requisite pecuniary interest to be a 'party in interest.'") (citing *In re Dennis*, 230 B.R. 244, 255 (Bankr. D.N.J. 1999); *In re Stewart*, 46 B.R. 73, 77 (Bankr. D. Ore. 1985); *In re Sheppard*, 173 B.R. 799, 806 (Bankr. N.D. Ga. 1994)).

McCutcheon argues that "one can assume" the cases defining a party in interest in § 1324 can be used to define the phrase in § 1330. Some appellate decisions support McCutcheon's assumption. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963 (11th Cir. 2016) ("A word or phrase is presumed to bear the same meaning through a text[.]") (citing Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012)). But other rules of statutory interpretation are applicable as well. Most notably, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is

10

used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

The contrasting contexts in which the Code uses the phrase "a party in interests" leads this Court to conclude that a holder of a disallowed claim may have standing to assert a revocation claim, though that creditor may not have had standing to object to confirmation. As the cases McCutcheon cited explain, the only basis for opposing a Chapter 13 confirmation is to argue that the debtor's proposed distribution violates some provision of the Code. *See, e.g.*, *In re Dennis*, 320 B.R. at 255 ("Objecting to confirmation is a creditor's only opportunity to challenge treatment of an allowed claim under the debtor's plan.") Thus, it makes sense that a party whose claim—its right to receive distribution under the Chapter 13 plan—is disallowed would have no interest in opposing the distribution to other creditors with allowed claims.

A party seeking revocation of the confirmation order, like Kupersmith, is in a different position. Rather than objecting to the distribution of the Chapter 13 plan, Kupersmith is asserting that McCutcheon fraudulently misrepresented his financial condition to the Court to obtain the confirmation order. To remedy this alleged fraud, Kupersmith seeks revocation of the Confirmation Order—including the order's res judicata and collateral estoppel effect—and dismissal of the case pursuant to § 1330(b). Dismissal of the case would restore the parties to the prepetition status quo, allowing Kupersmith to assert and collect any claims against McCutcheon. *See Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 984, 197 L.Ed. 2d 398 (2017) (noting that dismissal "aims to return [the parties] to the prepetition financial status quo.") Thus, Kupersmith is not making the futile argument that the Confirmation Order should be revoked and that McCutcheon should propose a new plan under which Kupersmith could still not receive distribution. He is arguing that the Confirmation Order should be revoked and that the

11

Court should dismiss the case, thereby allowing Kupersmith to pursue his claim against McCutcheon without interference from a bankruptcy proceeding. Through seeking revocation of the confirmation order and dismissal of McCutcheon's Chapter 13 case, Kupersmith retains a pecuniary interest in this case and is therefore permitted to assert this action.

### C. Judicial Estoppel

McCutcheon also argues that the equitable doctrine of judicial estoppel should bar Kupersmith from asserting his claims that McCutcheon stole valuable weapons and jewelry and that McCutcheon's transferred interest in Cheytac was worth tens of millions of dollars. Judicial estoppel "is intended to protect courts against parties who seek to manipulate the judicial process by changing their positions to suit the exigencies of the moment." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1176 (11th Cir. 2017). In the Eleventh Circuit, the doctrine prevents a party from making a statement that is inconsistent with another statement in a prior proceeding when the inconsistent statements (i) were made under oath and (ii) were made to "make a mockery of the judicial system." *Burnes v. Pemco Aeroplex*, 291 F.3d 1282, 1285 (11th Cir. 2002).

As to inconsistencies, McCutcheon directs the Court to statements Kupersmith made during the § 341(a) meetings and to the documents filed in Kupersmith's bankruptcy proceeding. Specifically, Kupersmith testified under oath that he gave firearms to Cheytac to offset liabilities that Cheytac and McCutcheon assumed. Kupersmith also stated that the weapons were worth approximately $100,000. Moreover, Kupersmith testified that he agreed to give McCutcheon a controlling interest in Cheytac because the company had little value given its large liabilities and pending litigation. These statements contradict many of Kupersmith's allegations in the complaint: that McCutcheon refused to return Kupersmith's weapons after agreeing to store them; that the weapons were worth over $500,000; that McCutcheon acted to defraud

12

Kupersmith of his interest in Cheytac, and; that, prior to McCutcheon's divestment of his interests in the company, Cheytac was worth tens of millions of dollars. Therefore, the first element of the estopple defense is clearly met.

Regarding the second element, McCutcheon argues that the Court should infer the statements were advertent and made to make a mockery of the judicial system because Kupersmith, by understating the value of his bankruptcy estate and thereby reducing the required dividend to unsecured creditors,[2] had a motive to conceal his assets. While prior Eleventh Circuit decisions deemed a party to have made a mockery of the judicial system because the party had a motive to conceal the assets, this fact is no longer dispositive after *Slater v. U.S. Steel Corp.* Rather, the inquiry is based on the specific circumstances surrounding the case. A court should consider factors such as

> the plaintiff's level of sophistication, whether and under what circumstances the plaintiff corrected the disclosures, whether the plaintiff told his bankruptcy attorney about the [assets of the estate] before filing the bankruptcy disclosures, whether the trustee or creditors were aware of the [assets of the estate] before the plaintiff amended the disclosures, whether the plaintiff identified other lawsuits to which he was party, and any findings or actions by the bankruptcy court after the omission was discovered.

*Slater*, 871 F.3d. at 1185.

Kupersmith argues that the inconsistent statements he made in his prior bankruptcy proceeding were made under Stern's influence during a period in which Kupersmith was ill and was unable to comprehend his own statements. Multiple affiants offer facts to support this argument. Each notes Stern's influence on Kupersmith's finances and businesses. Each states

---

[2] A Chapter 11 plan must, in the absence of acceptance, provide to a creditor at least the value the creditor would have received in a Chapter 7 liquidation. 11 U.S.C. § 1129(a)(7)(A)(ii). Accordingly if a debtor's estate has value that could be liquidated to provide a dividend to unsecured creditors, the debtor's plan must distribute to the creditor at least the hypothetical liquidation dividend to the creditor. By understating his assets then, Kupersmith could reduce his obligations under the plan.

13

that Stern restricted access to financial records. There is also evidence that Kupersmith was confused about the specifics of his finances and relied heavily on his attorneys to provide answers at his § 341(a) meetings. Further, Kupersmith notes that he made amendments to his petition and disclosed the misrepresentations to Chorches once he understood his § 341(a) testimony and other disclosures were inaccurate.

Therefore, the Court concludes the record contains enough evidence for a reasonable fact finder to conclude Kupersmith's inconsistent statements were not made to make a mockery of the judicial system. Thus, whether the doctrine of judicial estoppel should bar Kupersmith's action remains a triable issue of fact to be determined at trial.

### D. Failure to State a Claim

McCutcheon's fourth argument is substantively a motion under Federal Rule of Civil Procedure 12(b)(6).[3] McCutcheon argues that, because Kupersmith's complaint is based on his "belief" that McCutcheon misrepresented his assets and liabilities, Kupersmith's complaint fails to adequately state a claim for relief. This argument, however, fails, as the Federal Rules of Civil Procedure impose only limited requirements for a pleading party to state a claim and plausible grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that a complaint needs only to "give the defendant fair notice of what… the claim is and the grounds upon which it rests.") That the allegation is made only on information and belief, rather than stated definitively, is not ordinarily a basis for dismissal. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed. 2018) ("Although there is no express

---

[3] Kupersmith contends that the 12(b)(6) claim was not asserted in McCutcheon's answer. Paragraph sixty-two, however, states "[e]ven if all [of Kupersmith's] allegations are true, the elements of fraud in a § 1330 action have not been met." This provides notice to Kupersmith that McCutcheon would assert a FRCP 12(b)(6) defense. Moreover, a 12(b)(6) defense is not waived by failing to include the defense in a responsive pleading. Fed. R. Civ. Pro. 12(h)(2).

14

authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible.")

While the Eleventh Circuit has stated some exceptions to this general rule apply in fraud claims, the facts in Kupersmith's complaint are sufficiently pled to support the claim. Where a plaintiff alleges fraud, the pleading must sufficiently comply with Federal Rule of Civil Procedure 9's heightened pleading requirements. Fed. R. Bankr. P. 7009 (applying Fed R. Civ. P 9 to adversary proceedings). Those pleadings standards are not met and dismissal may be appropriate when a complaint states a claim based on information and belief but the claim is not supported by facts demonstrative of fraud. *See U.S. ex rel. v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002).

Here, Kupersmith's sixty paragraph complaint and attached affidavits allege many facts that, if adequately supported by evidence, could demonstrate fraud. These include allegations that McCutcheon sold valuable firearms and his interest in Cheytac but failed to disclose the proceeds of these sales. The allegations sufficiently provide a basis to support Kupersmith's claim under a heightened pleading standard.

## IV.    CONCLUSION

For the reasons set forth above, the Court denies the Motion. The Court concludes the defenses of res judicata, lack of standing, and failure to state a claim fail as a matter of law. Accordingly, the Court dismisses those defenses as permitted by Federal Rule of Civil Procedure 56(f), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. As to McCutcheon's judicial estoppel defense, there remains a triable issue of material fact—whether Kupersmith's inconsistent positions were made to make a mockery of the judicial system.

[END OF DOCUMENT]